IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Limorris Bell, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -vs- | ) | No. 25-cv-9679 |
| | ) | |
| City of Chicago, Joseph Vecchio, | ) | *(Jury Demand)* |
| Crystina Kittrell, and Richard | ) | |
| Rodriquez, Jr., | ) | |
| | ) | |
| *Defendants.* | ) | |

# COMPLAINT

Plaintiff, by counsel, files this complaint and alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is conferred by 28 U.S.C. § 1343 and § 1367.

2. Plaintiff Limorris Bell is a resident of the Northern District of Illinois. Plaintiff is a Black man who was 36 years old at the time of the events described in this complaint.

3. Plaintiff is one of many victims of officers assigned to the "1863 Tactical Team," a group of Chicago police officers who repeatedly make illegal and discriminatory traffic stops of Black drivers, conduct illegal searches, and make illegal arrests.

4. Officers on the 1863 Tactical Team have been the subject of multiple successful lawsuits.

5. Officers on the 1863 Tactical Team have been the subject of more than 50 complaints submitted to the Chicago Office of Police Accountability related to traffic stops, street stops, searches, and unprofessional conduct between December 2023 and December 2024.

6. The overwhelming majority (more than 90%) of these complaints involved stops of Black persons.

7. Defendant City of Chicago has investigated these complaints and has found several patterns of unreasonable acts: (1) unprofessional and disrespectful conduct, (2) the use of pretextual traffic stops, and (3) a consistent failure to follow Chicago Police Department policies concerning the documentation and recording of civilian/police encounters.

8. Defendant City of Chicago is an Illinois municipal corporation.

9. Defendants Vecchio, Kittrell, and Rodriquez (the "officer defendants") were at all relevant times acting under color of their authority as police officers of the City of Chicago.

10. On September 1, 2024, at about 5:45 p.m., plaintiff was lawfully operating his vehicle in the 100 block of East Bellevue Place in Chicago's Gold Coast Neighborhood when the officer defendants ordered him to stop the car.

11. Before ordering plaintiff to stop his vehicle, the officer defendants had not observed plaintiff commit any criminal or traffic offense.

12. Before ordering plaintiff to stop his vehicle, the officer defendants did not possess any information that could have provided a lawful justification to stop the vehicle.

13. The officer defendants knew that plaintiff was a Black man when they ordered him to stop his car.

14. The officer defendants ordered plaintiff to stop his vehicle because of plaintiff's race.

15. After stopping the car, the officer defendants ordered plaintiff to exit the car; the officer defendants then placed plaintiff in handcuffs.

16. The officer defendants did not have any lawful justification to order plaintiff to exit the car.

17. The officer defendants did not have any lawful justification to place plaintiff in handcuffs.

18. Defendant Rodriquez conducted pat-down searches of plaintiff's pants pockets.

19. Defendant Rodriquez did not have a lawful justification to undertake a pat-down search.

20. When he did the pat-down search, defendant Rodriquez did not feel anything inside plaintiff's pockets that could justify a more intrusive search.

21. Defendant Rodriquez nevertheless searched each pocket in plaintiff's pants: Defendant Rodriquez placed his hand into each pocket and removed and then examined the contents of each pocket.

22. Defendant Rodriquez did not have any lawful justification to search plaintiff's pockets.

23. Defendant Rodriquez did not observe any evidence of criminal wrongdoing in his illegal search of plaintiff's pockets.

24. While plaintiff was outside of his vehicle and handcuffed, the officer defendants searched the interior of plaintiff's car: They opened closed compartments inside the car, opened an opaque shopping bag they found inside the car that had been tied shut, and searched inside the trunk.

25. The officer defendants did not have any lawful justification to search inside plaintiff's car.

26. The officer defendants did not have any lawful justification to search inside the trunk of plaintiff's car.

27. The officer defendants did not have any lawful justification to open the closed compartments or the closed container they found inside of plaintiff's car.

28. Plaintiff, at all relevant times, did not consent to any search.

29. The officer defendants did not observe any evidence of criminal wrongdoing in any of their searches.

30. As a direct and proximate result of the conduct of the officer defendants, plaintiff became frightened and nervous.

31. The officer defendants belittled plaintiff's visible anxiety, told plaintiff that they were permitted to conduct the illegal searches, and insulted plaintiff by wrongfully accusing him of criminal activity.

32. The officer defendants released plaintiff from the handcuffs after they failed to find any evidence that could have justified their unlawful acts.

33. The widespread practice described below was a proximate cause of the above-described conduct of the officer defendants.

34. Data about traffic stops by the Chicago Police Department that defendant City of Chicago reported to the Illinois Department of Transportation between 2004 and 2024 shows a consistent disparity between stops of Black drivers and non-Black drivers.

35. Even though the driving population in Chicago is approximately one-third Black, Black drivers consistently make up significantly more than one-third of drivers subjected to traffic stops by defendant Chicago.

36. In 2024, Black drivers were 4.11 times more likely to be stopped than white drivers in Chicago.

37. In 2023, Black drivers were 3.75 times more likely to be stopped than white drivers in Chicago.

38. Defendant City of Chicago has turned a blind eye to the discriminatory and otherwise unlawful acts of its police officers in conducting traffic stops:

    a. On January 13, 2019, the ACLU of Illinois published a report titled "Racism in the Rear View Mirror: Illinois Traffic Stop Data 2015-2017." This report concluded that Chicago Police Department traffic stops increasingly targeted Black drivers from 2015 to 2017. The report found that, in 2017, for every 1,000 Black residents in Chicago, over 200 were stopped, compared to 50 for every 1,000 white residents.

    b. On March 1, 2022, defendant Chicago's Office of Inspector General published a report titled "Report on Race and Ethnicity-Based Disparities in Chicago Police Department's Use of Force," which found that "quantitative evidence from investigatory stop and traffic stop data shows an overwhelming disparity in the rates at which Black and non-Black people were stopped by the police. The overrepresentation of Black people among those stopped by the police was consistent across traffic stops and investigatory stops, and it was persistent across every CPD District, notwithstanding differences in District crime rates and the demographic composition of District populations."

  c. In April of 2025, Impact for Equity and the Free 2 Move Coalition published a report titled "Chicago Police Department 2024 Traffic Stops Data Report," finding that Chicago Police Department traffic stops and searches recorded from 2015 through 2024 disproportionately targeted Black and Latino drivers.

39. Despite being aware of the discriminatory and otherwise unlawful treatment of Black drivers, defendant City of Chicago has failed to take action to correct the unlawful conduct and has acted with deliberate indifference to the known or obvious risk of discrimination by Chicago police officers.

40. The above-described conduct of the officer defendants was caused by the deliberate indifference of defendant City of Chicago to the widespread practice of stopping Black drivers more than non-Black drivers.

41. As a result of the foregoing, plaintiff suffered compensable injuries, was deprived of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States, and, as supplemental state law claims against defendant City of Chicago only, was subjected to a violation of the Illinois Civil Rights Act and to the common law tort of intentional infliction of emotional distress.

42. Plaintiff hereby demands trial by jury.

WHEREFORE plaintiff requests that the Court enter judgment for appropriate compensatory and punitive damages against the officer defendants,

-8-

for appropriate compensatory damages against defendant City of Chicago, declare that defendant City of Chicago is obligated to indemnify the officer defendants for any award of compensatory damages, and order that the costs of this action, including fees and costs, be taxed against all defendants.

/s/ Joel A. Flaxman
Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
200 South Michigan Ave Ste 201
Chicago, Illinois 60604
(312) 427-3200
*Attorneys for Plaintiffs*